**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NELLY MUNIKAH,<br>*Plaintiff,*<br>v.<br>BIOREFERENCE LABORATORIES, INC.,<br>*Defendant.* | Civil Action No. 22-5570<br>**OPINION AND ORDER**<br>August 5, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court upon a Motion for Reconsideration filed by *pro se* Plaintiff Nelly Munikah ("Plaintiff"). (ECF 80, "Motion" or "Mot.") Plaintiff seeks reconsideration of the Court's January 28, 2026 Opinion (ECF 77, "Opinion" or "Op.") and Order (ECF 78) granting Bioreference Laboratories, Inc.'s ("Defendant") Motion for Summary Judgment (ECF 59), pursuant to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1(i). The Court having reviewed Plaintiff's Motion, has decided the matter upon submission, without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion for Reconsideration is **DENIED**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

The following is an edited summary of the factual background of this action previously provided in this Court's January 28, 2026 Opinion. (*See* Op. at 1.) Plaintiff is a black woman, who was hired in 2010 to work as a cytotechnologist at Defendant's New Jersey lab. (ECF 64, "Plaintiff Opposition" or "Pl. Opp." at 7, 11; ECF 59-2, "Defendant Statement of Material Facts" or "DSMF" ¶ 2; ECF 1, "Complaint" or "Compl." at 2.) Defendant is a New Jersey corporation that provides laboratory testing and clinical diagnostic services to physicians, hospitals, and health care providers. (Compl. at 2.)

Cytotechnologists employed by BioReference are non-exempt hourly employees subject to a Recording Work Hours Policy (the "Policy") that "strictly" prohibits off-the-clock work and requires employees to accurately record their time worked. (DSMF ¶¶ 7-8.) The Policy "clearly states that those who do not accurately record their time are subject to discipline, up to and including termination." (*Id.* ¶ 8.)

On June 29, 2018, Schouest issued Plaintiff a written warning for working unscheduled and unapproved overtime hours. (DSMF ¶ 17.) The warning stated that Plaintiff "failed to clock out at the 8[-]hour mark of scheduled shift 7 of 9 days worked this pay period after 2 previous email request[s] to keep an eye on clock out time." (ECF 59-6, Exhibit A, "Ex. A".) The warning called for corrective action, specifying that Plaintiff "will not work unscheduled shifts (weekend shifts)

---

[1] The facts and procedural history are drawn from the Court's Opinion (*see* Op.), Defendant's brief in support of the motion for summary judgment (ECF 59-1, "Defendant Brief" or "Def. Br."), Defendant's statement of undisputed material facts (ECF 59-2, "DSMF"), Plaintiff's opposition papers containing a statement of facts (ECF 64, "Plaintiff Opposition" or "Pl. Opp."), Plaintiff's response to Defendant's statement of material facts (ECF 64, Exhibit P, "Pl. Response"), and Plaintiff's Complaint (ECF 1, "Complaint" or "Compl."), and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

and timecard will be monitored daily until this has been resolved." (*Id.*) On September 2, 2018, after Plaintiff continued to work overtime without permission, Schouest issued another written warning. (DSMF ¶ 18.) This was not the first instance of Schouest disciplining Plaintiff. Previously, in 2017, Schouest removed Plaintiff's quality control duties for several weeks because of issues with her diagnoses. (DSMF ¶ 12.)

On September 12, 2018, Schouest met with Plaintiff and Human Resources ("HR") partner Leah Browne ("Browne") to discuss her quality control duties. (*Id.* ¶ 23.) HR and Browne placed Plaintiff on a performance improvement plan ("PIP") because her low-grade squamous intraepithelial lesion ("LSIL") diagnoses rate had increased in the month of August, after the issue had already been brought to her attention. (*Id.*) After being placed on the PIP, Plaintiff met with Browne to complain that the PIP was unfair, and that Schouest was targeting her unfairly due to favoritism of other cytotechnologists like Plaintiff's co-worker Penny Uzzetta. (*Id.* ¶ 28.) Plaintiff told Browne that she "would gather evidence to prove she should not have been placed on the PIP." (Opp. at 10.) Plaintiff then manually went through all the slides she reviewed for quality control over the past three months to disprove the necessity of the PIP, which entailed "extensive unauthorized off-the-clock-hours" of work. (DSMF ¶ 32.) Plaintiff did not seek permission for these additional hours, nor did Schouest or Browne authorize her to do so. (*Id.* ¶ 33.) On September 21, 2018, Schouest noticed on Plaintiff's daily work reports that she was spending "considerable time compiling information regarding whether the pathologist agreed with her diagnoses, so he checked to ensure [Plaintiff] had signed out slides for review," and noticed that she had signed out slides "hours after she clocked out." (*Id.* ¶ 35.) Schouest discovered that Plaintiff had worked a total of seventy (70) unauthorized, off-the-clock hours in 2018. (ECF 59-6, Exhibit J, "Ex. J.")

That same day, Schouest reached out to BioReference management to report Plaintiff's off-the-clock work and suggested that Plaintiff move back to her pre-2017 Monday through Friday work shift to help combat the issue. (DSMF ¶ 36.) BioReference's Executive Vice President and Laboratory Director Dr. James Weisberger, who was based in New Jersey, instructed that Plaintiff should be terminated and "noted another employee was terminated for similar issues." (*Id.* ¶ 37.) Five days later, on September 26, 2018, Browne and Schouest met with Plaintiff to explain that BioReference was terminating her employment because of her off-the-clock work, and they explained that the decision came from management in New Jersey. (*Id.* ¶ 38.) Defendant terminated Plaintiff rather than giving her a warning "because of the egregiousness of her violation." (*Id.* ¶ 42.)

Plaintiff filed a complaint against Defendant on September 20, 2022, alleging hostile work environment claims based on race and retaliation. (*See* Compl.) Defendant filed an Answer to the Complaint on January 9, 2023, (ECF 7), and the parties engaged in discovery. Plaintiff was deposed on May 29, 2024 (*see* ECF 59-4, Exhibit D, "Plaintiff Deposition" or "Pl. Dep."), and fact discovery was completed on June 13, 2024. (ECF 38.) Defendant filed a motion for summary judgment on April 22, 2025. (*See* ECF 59.) Plaintiff filed an opposition to the motion on June 24, 2025. (*See* ECF 64.)

On January 28, 2024, this Court granted Defendant's motion for summary judgment on all claims. (*See generally* Op.) The Court dismissed all of Plaintiff's Claims. (*Id.*) Defendant filed a Motion for Reconsideration on February 25, 2026. (*See* Mot.) Subsequently, Defendant filed a brief in opposition on April 6, 2026. (ECF 84, "Opposition" or "Opp.") Plaintiff then improperly filed a reply in support of her Motion for Reconsideration. (ECF 85.) Pursuant to Local Civil Rule 7.1(d)(3), no reply papers are permitted in connection with motions for reconsideration, absent

permission from the Court. (*See* ECF 87.) Because this Court did not grant any request to submit reply papers, Plaintiff's reply was improper and thus will not be considered when deciding Plaintiff's Motion. (*Id.*)

## II. LEGAL STANDARD

A motion for reconsideration is regarded as "the functional equivalent of a Rule 59 motion . . . to alter or amend judgment." *Venen v. Sweet*, 758 F. 2d 117, 122 (3d Cir. 1985). A party moving for reconsideration of an order of this Court must set "forth concisely the matter or controlling decisions which the party believes the Judge has overlooked." L. Civ. R. 7.1(i). Motions for reconsideration are "extremely limited procedural vehicle(s)" that are to be granted "very sparingly." *Clark v. Prudential Ins. Co. of Am.*, 940 F. Supp. 2d 186, 189 (D.N.J. 2013) (quotation marks omitted). A motion for reconsideration is inappropriate when a party merely disagrees with a court's ruling or when a party simply wishes to re-argue or re-hash its original motion. *Sch. Specialty, Inc. v. Ferrentino*, No. 14-4507, 2015 WL 4602995, at *2-3 (D.N.J. July 30, 2015); *see also Florham Park Chevron, Inc. v. Chevron U.S.A.*, 680 F. Supp. 159, 162 (D.N.J. 1988).

A motion for reconsideration may only be granted if the moving party shows "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [reached its original decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (quotation marks and italics omitted). Such a motion is "not a vehicle for a litigant to raise new arguments." *CPS Medmanagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 168 (D.N.J. 2013); *see Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001) (explaining a motion for reconsideration is not an opportunity to raise matters that could have been raised before the

original decision was reached). "Mere 'disagreement with the Court's decision' does not suffice." *ABS Brokerage Servs. LLC*, 2010 WL 3257992, at *6 (quoting *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 353 (D.N.J. 2001)). "A decision suffers from "clear error" only if the record cannot support the findings that led to that ruling." *Id.* (citing *United States v. Grape*, 549 F.3d 591, 603-04 (3d Cir. 2008) (citations omitted)).

## III. ANALYSIS

Plaintiff seeks reconsideration of the Court's January 28, 2026 Opinion, in which the Court granted Defendant's motion for summary judgement on all claims. (*See* Op.) Plaintiff first argues reconsideration is warranted because clarification is needed to ensure the Court correctly applied the standard of review for summary judgement under Federal Rule of Procedure 56. (Mot. at 2-3.) Plaintiff then lists numerous specific claims to which the Court either applied the wrong standard, and facts that the Court allegedly misunderstood or did not consider. (*Id.* at 2-5.) Finally, Plaintiff argues reconsideration is necessary to prevent manifest injustice. (*Id.* at 5-6.)

As to Plaintiff's first argument, a detailed discussion on the standard of review for summary judgment is within the Opinion, (*see* Op. 5-7), so the Court repeats only what is necessary here. In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). Plaintiff argues that reconsideration is warranted to ensure this Court properly applied the summary judgment standard. (*See* Mot. at 2.) But in doing so, Plaintiff simply repeats the governing standard and requests to the "extent" the Court made an error, it should clarify its Opinion. (*Id.*) Plaintiff's desire for clarification is not a basis for reconsideration. *See Blystone*, 664 F.3d at 415.

Plaintiff also argues that the Court either misapplied the summary judgement standard of review to, misunderstood, or failed to consider numerous facts. (Mot. at 2-3.) Plaintiff's argument boils down to a disagreement with this Court's conclusion that she did not show she engaged in a protected activity. (*Id.* at 3.) For example, Plaintiff argues that while Defendant stated Plaintiff "never used the word discrimination or harassment" with HR, Plaintiff testified in her deposition that she believed she was being discriminated against, and therefore ambiguity exists that the Court allegedly resolved in Plaintiff' favor. (*Id.*) However, Plaintiff fails to identify any tension between the two statements. (*See id.*) And Plaintiff's claim that she felt she was being discriminated against does not negate the fact that she did not raise the issue of race or discrimination when speaking with HR, and Plaintiff makes no claim that she made such remarks known to HR. (*See id.*)

Plaintiff further argues that the Court incorrectly determined that no other employee who worked a similar number of unauthorized hours went unpunished. (*Id.* at 3-4.) In its Opinion, the Court concluded that "Plaintiff [had] not produced any evidence of other employees who did 'the exact same thing' but did not face adverse employment action in the form of a PIP or termination." (Op. at 13.) Plaintiff argues that the Court's conclusion did not view the facts in the light most favorable to her because Defendant itself admitted that some "monitoring lapses occurred and that oversight of timekeeping was imperfect." (Mot. at 3-4.) [2] Yet the Court specifically discussed these facts and Plaintiff's argument in its Opinion. (Op. at 13 n.8.) Again, Plaintiff fails to identify a specific error in the Court's analysis of these facts, continues to make general claims that the

[2] Plaintiff also argues that at summary judgment she need only show similarities between coworkers in relevant aspects, and not an exact match of behavior. (*Id.* at 4.) While an exact match is not required, differentiating circumstances such as severity are considered. *See Hopkins v. Kuehne + Nagel Inc.*, No. 15-7454, 2018 WL 6243039, at *9 (D.N.J. Nov. 28, 2018). As the Court noted, there is no evidence that anyone who engaged in conduct of the same level of severity as Plaintiff went unpunished. (Mot. at 13 n.8.)

Court failed to view the evidence in the light most favorable to her, and does not show clear legal error. (*See* Mot. at 3-4.)

Plaintiff then argues what appears to be error of fact, claiming the Court failed to consider the timeline of the record. (*Id.* at 4.) Plaintiff specifically argues that the Court failed to consider that she was placed on a PIP before her employer claimed she worked over 70 unauthorized hours. (*Id.*) The Court detailed and considered the timeline of events throughout its Opinion. (*See generally* Op.) Additionally, the Court specifically noted the Plaintiff had received warnings for working unauthorized hours prior to being placed on a PIP. (Op. at 13.) Therefore, this Court properly considered the timeline in the Opinion. (*See generally* Op.)

Plaintiff next argues that the Court failed to evaluate a factual dispute in the light most favorable to her. (Mot. at 4-5.) Plaintiff argues there is a factual dispute because she did not have access to Defendant's records and could not confirm the number of unauthorized hours she worked. (*Id.*) However, Plaintiff does not dispute the accuracy of the payroll record, or that she worked a significant number of unauthorized hours. (*Id.*) Plaintiff once again does not identify how the Court misapplied the summary judgment standard, but makes a broad assertion that it was applied improperly. (*See id.*) Thus, Plaintiff does not show a clear legal error.

Plaintiff also argues reconsideration is warranted because the Opinion stated, "[t]he record reflects that Plaintiff logged over 70 unauthorized hours in 2018," but the term "unauthorized hours" is not in the Policy the Opinion cites. (Mot. at 5.) Plaintiff acknowledges that the Court's description of the Policy is accurate, but Plaintiff simply seeks to match the Opinion's wording to Defendant's employment policies. (*Id.*) Plaintiff also states that the Policy does not mandate termination as the sole outcome (*id.*), but this fact is not in dispute and was expressly stated in the

Court's Opinion. (Op. at 2.) Ultimately, Plaintiff's disagreement with the Court's treatment of the facts in this matter does not form a basis for reconsideration. *See Blystone*, 664 F.3d at 415.

Plaintiff's final argument for reconsideration is to prevent "[p]rocedural [f]oreclosure and [m]anifest [i]njustice." (Mot. at 5-6.) Plaintiff does not argue how manifest injustice would take place without reconsideration but rather appears to make a general assertion that relief is required to prevent it. (*Id.*) Plaintiff then appears to argue that her prior withdrawal of her statement of material facts was merely procedural and that its contents should still be included in the Court's analysis. (*Id.*) As the Court noted in its Opinion, Plaintiff did not withdraw her statement for procedural reasons but because it included false claims and quoted unproduced emails, (Op. at 1 n.1), as such it was properly withdrawn and will not be considered.

Plaintiff is seeking "a second bite at the apple" by attempting to relitigate facts the Court has already properly considered. *See Tischio v. Bontex Inc.*, 16 F. Supp. 2d 511, 532 (D.N.J. 1998). It is well established that a motion for reconsideration is not an avenue for a litigant to reargue or rehash their original motion. *Sch. Specialty, Inc.*, 2015 WL 4602995, at *3. Plaintiff has raised no new facts or intervening change in controlling law. (*See generally* Mot.) Plaintiff failed to show any clear error of law or fact. (*Id.*) Plaintiff is relitigating claims this Court has previously ruled on and fails to present new evidence, law, or facts that allow Plaintiff's claims to be reconsidered. *See P. Schoenfeld Asset Mgmt., LLC*, 161 F. Supp. 2d at 352 (holding a motion for reconsideration "may not be used to relitigate old matters, nor raise arguments or present evidence that could have been raised prior to the entry of judgment"). The Court may not reconsider its Opinion and Order granting summary judgment because Plaintiff did not show newly available evidence, controlling law, or clear error. *Blystone*, 664 F.3d at 415. Accordingly,

**IT IS** on this **5th** day of **August 2026**,

1. **ORDERED** that Plaintiff's Motion for Reconsideration (ECF 80) is hereby **DENIED** and it is further

2. **ORDERED** that Plaintiff's letter Motion (ECF 81) is hereby **TERMINATED** as moot; and it is finally

3. **ORDERED** that this case is to remain **CLOSED**.

**SO ORDERED.**

*/s/ Jamel K. Semper* .
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Jessica S. Allen, U.S.M.J.
Parties